JAMES H. FAULKNER, Retired Justice.
In a two-count indictment, Terry Levon Mitchell was charged with the offenses of rape in the first degree, in violation of § 13A-6-61, Code of Alabama 1975, and sodomy in the first degree, in violation of § 13A-6-63, Code of Alabama 1975. The jury found Mitchell guilty of the lesser included offense of attempted rape in the first degree, and he was sentenced as a habitual offender to a term of 20 years and 1 day in the state penitentiary. Three issues are raised on appeal.
I
Mitchell contends that the Alabama rape shield statute, § 12-21-203, Code of Alabama 1975, is unconstitutional because it constitutes a denial of due process and denial of confrontation of witnesses in that it prevents the accused from producing testimony regarding the victim’s general reputation for immorality. We disagree.
In Young v. State, 429 So.2d 1162 (Ala.Cr.App.), cert. denied, 429 So.2d 1162 (Ala.1983), we held that § 12-21-203 does not violate appellant’s right to due process or an appellant’s right to confront witnesses against him.
Mitchell, moreover, has not alleged that the prior “sex for drugs” incidents he sought to introduce evidence of involved him and the victim. Alabama’s rape shield statute would have allowed Mitchell to introduce evidence regarding the victim’s sexual history if it had involved Mitchell. Smelcher v. State, 520 So.2d 229 (Ala.Cr.App.1987).
Furthermore, § 12-21-203 only prevented Mitchell from impeaching the victim’s credibility by showing evidence of sexual history; this statute did not prevent Mitchell from impeaching the victim through other character witnesses who could testify that the victim’s general reputation for truth and veracity was bad. See Phillips v. State, 545 So.2d 221 (Ala.Cr.App.1989). Hence, § 12-21-203 does not violate Mitchell’s right to due process or his right to confront witnesses against him.
II
Mitchell contends that his statement to police was involuntary because the statement was taken after he had invoked his right to counsel. The state responds that the police officers stopped any questioning of Mitchell when he indicated that he would not talk without a lawyer and that it was Mitchell who later initiated the second con *178 versation with the officers and who gave his statement after being re-advised of his rights.
A hearing was held outside the jury’s presence on the issue of the voluntariness of Mitchell’s statement Mitchell to the officers. On voir dire questioning by defense counsel, Investigator Jackson testified as follows:
“Q Now, did you, on the scene when he asked for an attorney — did you tell him that one would be provided for him, or did you tell him he would be able to get one later, or did you even make a comment?
“A I didn’t make any comment. I stopped any further questioning at that point.
“Q You gave him his Miranda warnings or rights again. Did you give1 them to him on the scene?
“A No, sir. They had been read to him by Officer Plemons. I didn’t really intend to question him at the scene. All I was trying to ascertain was what his name was and he refused to tell me.
“Q Now, did he first say something to you before you gave him his Miranda warnings, or did you just give them to him again and then he decided that he would cooperate with you?
“A He said something to me, which I just told you what he said — he said he knew the bitch and he wanted to cooperate, and I stopped him. I said, ‘You asked for an attorney earlier and before I talk to you I have to re-advise you of your rights. I re-advised him of his rights. I read them one by one and then asked him on the waiver portion each one of the questions, and he replied ‘Yes’ to each one of them. Then I let him go on and talk with me.
“Q You say you did have him sign the waiver form concerning his rights?
“A No, he didn’t sign anything.
“Q But you went through it with him?
“A Yes, I did.
“Q At any point in time there before he made any incriminating statement, other than what you said he said, did he ask for an attorney again?
“A No, sir, he did not.”
On further examination by the state, Investigator Jackson testified:
“Q Investigator Jackson, now, the words he used at the scene were, ‘I ain’t got to tell you nothing without a lawyer.’ Is that right?
“A Yes, sir.
“Q Did he ever say to you, T want a lawyer’?
“A No, sir, he didn’t.
“Q So he never has to this day requested an attorney, has he?
“A No, he hasn’t.
“Q But even though he hasn’t done that, when he said, T don’t have to say anything to you without a lawyer,' you stopped talking to him?
“A That is correct.
“Q And then he ... talked to [you] again at headquarters when pictures were taken; is that correct?
“A Yes, sir.
“Q And he initiates the conversation?
“A That is correct.
“Q And he said what you have already told the court a couple of times?
“A Yes.
“Q T knew the bitch and I want to cooperate.' that right?
“A Yes.
“Q And you stopped him there in mid-sentence and told him that before he told you anything you need to re-advise him of his rights?
“A Right.
“Q And at which time you did that?
“A Yes.
“Q He acknowledge [sic] them and then talked to you?
“A Yes.”
Mitchell’s claim that his statement was involuntary because the statement was taken after he had invoked his right to counsel is without merit because the record clearly indicates 1) that the officers stopped any questioning of Mitchell when he indicated that he would not talk without a lawyer, and 2) that Mitchell initiated the second conversation and made his statement only *179 after being informed of his rights again prior to the second conversation. Hence, the officers complied with the following requirements of Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed.2d 378 (1981):
“We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.”
We note that any conflict between Mitchell’s testimony at trial and his prior statement to the officers presents a jury question affecting the credibility of him as a witness and not the admissibility of the statement. Waddle v. State, 473 So.2d 580 (Ala.Cr.App.1985). The trial court therefore properly allowed Mitchell’s statement into evidence.
Ill
Mitchell argues that the state violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to disclose to Mitchell prior to trial the toxicology report that indicated that the pipe found in his car contained cocaine.
Mitchell, who did not object to the failure to receive the report at the time of trial, raises this issue for the first time on appeal. Objections to the admission of evidence must be made when the evidence is offered. Starling v. State, 398 So.2d 337, 341 (Ala.Cr.App.), cert. denied, 398 So.2d 342 (Ala. 1981). Matters not objected to at trial will not be considered on appeal. Gray v. State, 455 So.2d 163 (Ala.Cr.App. 1984). Even alleged constitutional violations generally have to be properly raised at trial. Block v. State, 455 So.2d 1011 (Ala.Cr.App.1984). Because Mitchell did not object at trial to the failure of the prosecution to give him a copy of the toxicology report, that issue was waived for purposes of appellate review.
Mitchell, moreover, apparently had independent knowledge that the pipe contained cocaine and did not need the report to impeach the victim because he extensively examined the victim and investigating officer on that point during cross-examination. Mitchell himself testified that the victim had the pipe and was smoking cocaine. Prosecutors have no duty under Brady to disclose evidence available to the defense from another source. Hurst v. State, 469 So.2d 720 (Ala.Cr.App.1985). Hence, because Mitchell knew of the cocaine pipe prior to trial, no prejudice resulted from his failure to receive a copy of the toxicologist’s report prior to trial.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.