Elmer Dennis, Jr., was convicted of rape in the first degree, Ala. Code 1975, § 13A-6-61(a)(3), for having had sexual intercourse with his then 11-year-old daughter. He was sentenced pursuant to the Habitual Felony Offender Act, § 13A-6-9, to 99 years' imprisonment. The Court of Criminal Appeals affirmed his conviction, with an unpublished memorandum. Dennis v. State, (No. CR-96-1481) 728 So.2d 710 (Ala.Crim.App 1998) (table). We granted Dennis's petition for certiorari review to determine whether the Court of Criminal Appeals erred in holding that the trial court did not unconstitutionally apply Alabama's rape-shield law by excluding evidence that Dennis says indicates that a third person had engaged in sexual intercourse with the victim. We affirm.
The evidence at trial tended to show that Dennis began sexually abusing the daughter when she was about 10 years old. The daughter testified that Dennis had had sexual intercourse with her on more than 10 occasions, including one time around Easter 1996; this occasion was the basis of Dennis's conviction in this case. The only physical evidence indicating that Dennis had had intercourse with the daughter was supplied by Dr. John F. Shriner, an expert who testified on behalf of the prosecution. Dr. Shriner testified that his examination revealed that the child's hymen showed signs of penetration. Dr. Shriner admitted that he could not tell from his physical examination who might have engaged in sexual activity with her or how recently sexual activity might have occurred. However, Dr. Shriner stated unequivocally that, in his opinion, her condition was caused by recurrent penetration rather than by a one-time occurrence.
In an attempt to rebut Dr. Shriner's testimony regarding the daughter's medical condition, Dennis sought to introduce the testimony of C.M. Outside the presence of the jury, C.M. testified that on one occasion in August 1996 she witnessed a man named Sherman Packer attempting to force himself sexually on this child. C.M. claimed that she witnessed this incident when she entered Packer's house after being told that Packer had been "messing with" this child. She also stated that both Packer and the child had their pants down and that "he was trying to go up in her." When asked if she saw whether Packer had actually penetrated the child, C.M. responded, "It was close. I don't know. They was against each other and she *Page 140 
was trying to get away from him when I walked in there." C.M. acknowledged that this was the only time she had actually seen Packer attempting to have sex with this child. However, C.M. also testified that in March 1996 the child had come over to C.M.'s house upset and on that occasion had told C.M. that "she was menstruating because [Packer] had roughed her up and rammed up in her."
The trial court did not permit the jury to hear C.M.'s testimony regarding the child's alleged sexual history with Sherman Packer. The trial court ruled that C.M.'s testimony was inadmissible according to Alabama's rape-shield statute, Ala. Code 1975, § 12-21-203, and Rule 412, Ala. R. Evid., because either it was not probative or its prejudicial effect and tendency to confuse the jury substantially outweighed any probative value it might have. The trial court also stated that even if it were true that someone other than Dennis had had intercourse with the child, that fact would not prove that Dennis had not also had intercourse with her.
We note that although the trial court held that the evidence was inadmissible according to § 12-21-203, that statute had been superseded by Rule 412, Ala. R. Evid., at the time of Dennis's trial. See Rule 412, Ala. R. Evid., Advisory Committee's Notes (stating that effective January 1, 1996, § 12-21-203
was superseded by Rule 412). Furthermore, although both the parties in their briefs, and the Court of Criminal Appeals in its unpublished memorandum, refer to "the rape shield statute," the only question before this Court is whether the trial court unconstitutionally applied Rule 412, because § 12-21-203 was no longer in effect. Therefore, we confine our analysis to a discussion of the constitutionality of the trial court's application of Rule 412.
Dennis argued to the Court of Criminal Appeals that the trial court's application of Rule 412 violated his right to due process by depriving him of an opportunity to present evidence and argument in his own defense. The Court of Criminal Appeals rejected this argument, concluding that, according to Rule 412, evidence of a rape victim's past sexual experience is admissible only in those instances in which that past experience directly involved the participation of the accused. The Court of Criminal Appeals also noted that the courts of this State have repeatedly rejected arguments that the rape-shield statute is unconstitutional, and, therefore, it concluded that the trial court's application of Rule 412 was not unconstitutional.
Dennis argues that the Court of Criminal Appeals erred in holding that evidence of a rape victim's past sexual experience is admissible only in those instances in which the past experience involved the accused and in holding that the trial court did not unconstitutionally exclude the testimony regarding Sherman Packer. We agree that the Court of Criminal Appeals' holding regarding the application of Rule 412 was incorrect; however, we conclude that the testimony Dennis sought to introduce was properly excluded on other grounds.
While our research has produced no published cases addressing the constitutionality of Rule 412, we note that when it proposed this rule to this Court, the Advisory Committee stated in its comments, "Rule 412 is intended to effect no change in that line of well developed judicial authority interpreting Alabama's preexisting `rape shield' statute." As the Advisory Committee noted in its comment, Rule 412 merely "expand[ed] the [rape-shield statute's] definition of `evidence relating to past sexual behavior' to include opinion evidence regarding the victim's character" and changed the notice provisions of the rape-shield statute. In all other substantive aspects, the rule is the same as the rape-shield statute. Therefore, we will look to past cases involving questions directed toward the constitutionality of the rape-shield statute to determine whether Rule 412 was constitutionally applied in the present case.
The Court of Criminal Appeals correctly recognized that that court has repeatedly rejected constitutional challenges to the rape-shield statute. See Mitchell v. State, 593 So.2d 176 (Ala.Crim.App. 1991); Fairchild v. State, 505 So.2d 1265 (Ala.Crim.App. 1986); Hall v. State, 500 So.2d 1282 (Ala.Crim.App. 1986); Darrow v. State,451 So.2d 394 (Ala.Crim.App. 1984); Mosely v. State, 448 So.2d 450
(Ala.Crim.App. 1984); Young *Page 141 
v. State, 429 So.2d 1162 (Ala.Crim.App. 1983). It also correctly recognized that the plain language of Rule 412 appears to exclude absolutely all evidence of the victim's past sexual behavior unless "the court . . . finds that such past sexual behavior directly involved the participation of the accused." In fact, the Court of Criminal Appeals has held that the rape-shield statute made "`[e]vidence of sexual activity between the complaining witness and third persons . . . immaterial and irrelevant.'" See McGilberry v. State, 516 So.2d 907, 914
(Ala.Crim.App. 1987), quoting Smiley v. State, 435 So.2d 202, 206
(Ala.Crim.App. 1983).
However, we conclude that to read Rule 412 as requiring an absolute exclusion of all evidence of past sexual activity between the victim and third persons could, in some cases, violate a criminal defendant's constitutional rights. See Charles W. Gamble, McElroy's Alabama Evidence, § 32.01, p. 143 (5th ed. 1996) ("It would appear, however, that such an absolute exclusion would be inapplicable when to enforce it would violate a criminal defendant's constitutional rights."). Therefore, we hold that when Rule 412 is applied to preclude the admission of particular exculpatory evidence, the constitutionality of its application is to be determined on a case-by-case basis. Accord Tague v. Richards, 3 F.3d 1133, 1137 (7th Cir. 1993). To the extent that cases previously decided by this Court or the Court of Criminal Appeals are contrary to this holding, they are overruled.
Dennis argues that the trial court violated his right to due process by excluding evidence that he says indicates a third person's sexual activity with the victim caused the physical condition presented by the prosecution as evidence of rape. Although this Court has not addressed such an argument before, we note that other jurisdictions have held that admission of evidence offered to show that a physical injury or condition of the victim could have been inflicted by someone other than the accused is constitutionally required in some cases. See Williams v. State, 681 N.E.2d 195, 201 (Ind. 1997); see also Tague, supra (concluding that because the prosecution introduced evidence showing that 11-year-old victim was not a virgin, with hope that the jury would infer that the defendant caused the hymenal condition, it was constitutional error for the court to apply the rape-shield law to preclude testimony that the victim's father had molested the victim several times before the charged crimes); United States v. Bear Stops, 997 F.2d 451 (8th Cir. 1993) (admission of evidence regarding facts of sexual assault by third persons was constitutionally required, to show alternative explanation for physical and mental abuse); Neeley v. Commonwealth, 17 Va. App. 349, 437 S.E.2d 721 (1993) (rape defendant's constitutional rights of compulsory process, confrontation, and due process entitled him to introduce evidence of victim's prior sexual behavior to explain presence of hair fragment found in cervix, even though such evidence fell outside an exception to Virginia's rape-shield statute; evidence tended to rebut assertion that the defendant was the source of the hair fragment, which was the only significant physical evidence of guilt); United States v. Begay, 937 F.2d 515 (10th Cir. 1991) (where prosecution specifically relied on victim's enlarged hymen as evidence of molestation, Confrontation Clause mandated admission of evidence of another source of that condition); State v. Pulizzano, 155 Wis.2d 633, 456 N.E.2d 325 (1990) (constitutional guarantees of confrontation and compulsory process required that the defendant be able to cross-examine seven-year-old victim about prior sexual assault in order to rebut prosecution's suggestion that the victim could have possessed explicit sexual knowledge only if defendant had committed the charged sexual assault); State v. Douglas,797 S.W.2d 532 (Mo.App. 1990) (reversing first-degree-sexual-assault conviction because the defendant was not allowed to offer evidence that the victim had engaged in intercourse with another person, following expert testimony that a medical examination of the victim disclosed an absence of hymenal tissue).
In addition, other states and the federal courts, perhaps anticipating a constitutional argument similar to Dennis's, have made express exceptions permitting the introduction of evidence of the victim's sexual history where it is offered to rebut or to *Page 142 
explain away scientific or medical evidence offered by the prosecution in a rape case. See Fed.R.Evid. 412; Colo.Rev.Stat.Ann. § 18-3-407; Conn.Gen.Stat.Ann. § 54-86f; Fla.Stat.Ann. § 794.022; Ind.R.Evid. 412; Ky.R.Evid. 412; La. Code Evid.Ann. Art. 412; Md.Ann. Code Art. 27, § 461A; Mass.Gen. Laws Ann. ch. 233, § 21B; Mich.Comp. Laws Ann. § 750.520j; Minn.R.Evid. 412; Miss.R.Evid. 412; Mo.Ann.Stat. § 491.015; Mont. Code Ann. § 45-5-511; N.H.R.Evid. 412; Okla.Stat.Ann.tit. 12, § 2412; Tenn.R.Evid. 412; Tex.R.Crim.Evid. 412; Wis.Stat. § 972.11.
Moreover, the exception in Rule 412, Fed.R.Evid., was apparently included in the federal rule because of the outrage over this State's now infamous prosecutions of the "Scottsboro nine" in the 1930s. See 21 Charles Alan Wright Kenneth W. Graham, Jr., Federal Practice and Procedure § 5388, pp. 590-98 (1980) (hereinafter "Wright Graham"). In fact, the exception in the federal rule is known as the "Scottsboro exception," or a recognition of the "Scottsboro rebuttal." Id. at 590-91. The trials of the Scottsboro nine serve as an excellent reminder of the need for such an exception.
In the "Scottsboro cases," nine black men were accused of raping two white women on a freight train while it was traveling through northern Alabama. A key piece of circumstantial evidence offered on behalf of the prosecution in the defendants' first trial was medical testimony indicating that small amounts of semen had been found in the vagina of each woman. The defendants attempted to offer evidence in rebuttal to prove that these women had had sex the night before the alleged rapes, and, therefore, that the defendants were not the source of the semen. This rebuttal evidence was important because the small amount and the nonmotile condition of the semen found in the women was inconsistent with their account of a "gang rape" that the women had alleged had occurred on the day they were examined, and because the only other evidence in the trial was the testimony of the alleged victims. The trial court, however, excluded the rebuttal evidence on its own motion and scathingly chastised the defendants' lawyer for attempting to introduce it. Several of the defendants were later found guilty. Some of the defendants' convictions were overturned, and other defendants were released when it was later determined that the women were lying about the rape to cover up for their own "hoboing." See, Dan T. Carter, Scottsboro: A Tragedy of the American South (1969), for an excellent, thorough account of the cases involving the Scottsboro nine. According to Wright Graham, the trials, and the negative "public perceptions of the fairness of the trials," motivated "civil libertarians" to ensure the inclusion of the "Scottsboro exception" in Rule 412, Fed.R. Evid. See Wright Graham, supra, § 5388, p. 591.
We agree with the other jurisdictions that the "Scottsboro exception" is not only wise, but is constitutionally required in some cases in which the prosecution offers evidence to show that a physical injury or condition of the victim indicates that the defendant committed the offense of rape. To the extent that cases previously decided by this Court or the Court of Criminal Appeals are contrary to this holding, they are overruled.
Of course, "Scottsboro rebuttal" evidence would not be relevant in a prosecution in which the defendant claims that the victim consented to intercourse, because, in such a case, the defendant admits to being the source of the physical condition. Also, the evidence is admissible only to rebut physical evidence offered by the prosecution; it is not freely admissible by the defendant. In addition, the evidence offered by the defendant to rebut the prosecution's evidence cannot be "reputation" or "opinion" evidence that would be prohibited by Rule 412, Ala. R. Evid., and it must satisfy the other applicable rules of evidence. Under these standards, we examine the trial court's ruling in the present case.
Dennis maintains that C.M.'s testimony rebuts the State's physical evidence implying that Dennis created his daughter's hymenal condition and was therefore admissible under the "Scottsboro exception." The State, however, contends that the trial court did not abuse its discretion by excluding C.M.'s testimony. The State says the testimony was irrelevant and overly prejudicial and says *Page 143 
that it properly objected on those grounds. We agree that the trial court did not abuse its discretion by excluding C.M.'s testimony.
The State objected to C.M.'s testimony on the grounds that it was inadmissible under Rule 412, Ala. R. Evid.; that it was not probative; and that even if it was probative, its tendency to confuse the jury would substantially outweigh its probative value. The trial court sustained the State's objections on those grounds. A trial court has broad discretion in determining the relevancy of evidence and whether that evidence is inadmissible because its prejudicial effect substantially outweighs its probative value, and its ruling on these issues will not be disturbed on appeal absent a clear showing of abuse of that discretion. See Ex parte Register, 680 So.2d 225 (Ala. 1994); Hargress v. City of Montgomery, 479 So.2d 1137 (Ala. 1985). In addition, a trial court will not be put in error for sustaining an objection even though a proper objection was not stated. See Smith v. Dillard, 291 Ala. 96, 278 So.2d 358 (1973).
First, C.M.'s testimony that the child told her that Packer had "rammed up in her" was inadmissible hearsay because it was offered to prove that Packer had had sex with the child, an activity that resulted in her hymenal condition. See Commonwealth v. McGee, 42 Mass. App. 740, 679 N.E.2d 609 (1997) (testimony by a proposed defense witness that victim told witness that victim had had sex with someone other than the defendant was inadmissible hearsay if offered to prove that victim in fact had had the sexual encounter); see also Wright Miller, supra, § 5388, p. 593 (stating that inadmissible hearsay cannot be used to rebut the prosecution's physical evidence of intercourse). Therefore, although the trial court did not exclude the evidence upon an objection that it was inadmissible hearsay, the court's ruling was correct. See Smith, supra.
Second, we cannot hold that the trial court abused its discretion in ruling that C.M.'s testimony that she saw Packer attempting to have sex with the child was inadmissible because its prejudicial effect substantially outweighed its probative value. Dr. Shriner testified unequivocally that he believed the child's condition was caused by recurrent penetration, rather than by a single incident. Thus, C.M.'s testimony regarding the assault had very limited probative value because her testimony would not have established that penetration occurred during the incident involving Packer, much less that Packer was responsible for recurrent penetration.
Therefore, we hold that the trial court did not err in finding that C.M.'s testimony was inadmissible and that the Court of Criminal Appeals' statement of an erroneous rationale for holding that Rule 412 made C.M.'s testimony inadmissible was harmless. Accordingly, the judgment of the Court of Criminal Appeals affirming Dennis's conviction is affirmed.
AFFIRMED.
Hooper, C.J., and Maddox, Houston, Cook, See, and Lyons, JJ., concur.
Kennedy, J., concurs in the result.
Brown, J., recuses herself.