JOINER, Judge.
D.W.H. was convicted of four counts of first-degree sodomy, see § 13A-6-63, Ala. Code 1975. The circuit court sentenced D.W.H. to 204 months’ imprisonment on each conviction and ordered that the sentences were to run concurrently. Additionally, the circuit court ordered D.W.H. to pay a $250 crime-victim-compensation assessment and court costs. D.W.H. filed a motion for a new trial, which was denied. This appeal followed.
At trial, the State’s evidence tended to establish the following: S.H. testified that at the time of trial she was 16 years old and lived in Millbrook with her mother, stepfather, sister, and brother. S.H. testified that D.W.H. is her father. S.H. stated that she visited D.W.H. “every other weekend.” (R. 69.) S.H. testified, however, that she really did not want to see him. S.H. stated that D.W.H. would “get mad easily” and “yelled.” (R. 70.) S.H. stated that she started remembering things that had happened to her and “was having a lot of nightmares about the past,” which she described as “flashbacks.” (R. 71.) S.H. testified that the flashbacks “were of [her] abuse when [D.W.H.] would hit [her].” (R. 72.)
S.H. testified that the first incident of sexual abuse occurred in Millbrook at “[her] old house” when her mother and D.W.H. were still married. (R. 73.) S.H. stated that during this first incident she “was in [her] room and [D.W.H.] would start hitting [her] and then [D.W.H.] would rip [her] clothes off, take his off, and then stick his penis in [her] butt.” (R. 72.) S.H. stated that this “would make [her] scream and holler and kick.” (R. 72.) *852 S.H. further stated that D.W.H. had a “whip type thing” and would hit her with it on her “head and [her] back.” (R. 74.) S.H. testified that during this first incident no one was home. S.H. stated that after the incident D.W.H. left the house and did not return until late that night.
S.H. testified that a second incident occurred at her aunt’s house in Millbrook when S.H. was 10 years old. S.H. stated that she went to her cousin’s room and played with some toys, and D.W.H. came into the room and “picked [her] up and threw [her]” onto the bed. (R. 78-9.) S.H. stated that D.W.H. then “forced [her] to stroke his penis.” (R. 80.) S.H. testified that D.W.H. then took his clothes off and “put his penis in [her] butt.” (R. 80.) S.H. stated that it was “very painful” and that she kicked D.W.H. S.H. further testified that D.W.H. held a gun to her head during the incident.
S.H. testified that a third incident occurred at Mortar Creek in Elmore County. S.H. stated that she went “mud riding” with D.W.H. and some family friends. S.H. testified that, at some point, she and D.W.H. were by themselves and D.W.H. told her “to get in the back of the truck.” (R. 86.) S.H. stated that, after she got into the back of the truck, D.W.H. got into the back with her and told her to lie down. S.H. stated that D.W.H. then took off her clothes and “put his penis in [her] rear.” (R. 88.) S.H. testified that it was painful and that she told him to stop. S.H. stated that D.W.H. then hit her on the back of the head. S.H. testified that D.W.H. then “shoved his penis in [her] mouth, but [she] turned too quick” and, she said, “it didn’t go in [her] mouth.”
S.H. testified that a fourth incident occurred at Dorie’s house — a friend of D.W.H.’s — which was located in Elmore County. S.H. stated that when she went inside the house there was “a lot of smoke everywhere.” (R. 91.) S.H. testified that D.W.H. told her to go to the other room because he needed to talk to her. S.H. stated that D.W.H. ordered her to remove her clothes but she refused and that D.W.H. then took her clothes off her. S.H. testified that D.W.H. then “shoved his penis in [her] butt.” (R. 92.) S.H. testified that during this incident D.W.H. hit her with the “whip type thing.”
S.H. testified that she told her stepfather, J.E.S., and her friend what D.W.H. did to her. S.H. stated that after telling J.E.S. she told her mother, and they then went to the police.
Dr. Penny "White testified that in 2009 she was employed as a medical doctor for Montgomery Primary Health Care Center. Dr. White testified that she earned her medical degree from Howard University and has been qualified as an expert in child-sex-abuse examinations. Dr. White stated that she has examined more than 2,500 children for sexual abuse in her career. Dr. White testified that she examined S.H. on August 18, 2009, at Montgomery Primary Health Care Center. Dr. White further testified that, during the physical examination, S.H. complained that she was hurting and she had to give S.H. a “minute or two” to calm down. Dr. White testified that her examination revealed “suggestive evidence of vaginal penetration” but the “anal findings were normal.” (R. 162.) Dr. White stated that S.H. “had a split in her hymen ... but the rectum itself had ... minimal relaxation there. But there was not — that was not evidence — it was not dilated enough for me to say there was evidence of anal penetration.” (R. 164-65.) Dr. White stated that S.H. did not disclose to her that there had been vaginal intercourse; rather, S.H. told her that “he had put it in her back side.” Dr. White further testified that it is very unusual to have evidence of anal pen *853 etration because the rectum “just doesn’t show wear and tear and damage,” but the hymen is “fragile tissue, so it breaks more easily.” Dr. White further testified that “for kids who say that they were penetrated anally, when they do have findings, little girls, probably about 30 percent of them will have vaginal ... trauma.” Dr. White concluded that her “findings fit [S.H.’s] story.”
J.E.S. testified that he is S.H.’s stepfather. J.E.S. testified that S.H. began having nightmares where she would wake up in the middle of the night screaming. J.E.S. further testified that S.H. told him about sexual allegations involving D.W.H. J.E.S. testified that they went to the police the same day that S.H. disclosed the allegations of sexual abuse.
J.S. testified that she is S.H.’s mother. J.S. stated that she was married to D.W.H. for 18 years and they divorced in 2006. J.S. stated that there were allegations that D.W.H. sexually abused S.H. but that those allegations had nothing to do with her divorce. J.S. testified that S.H. “has bad nightmares and wakes up in the middle of the night hollering that somebody is chasing her and she sees bad things.”
Detective Parker Crosby testified that he is employed by the Millbrook Police Department. Detective Crosby stated that he became involved in this case when S.H.’s mother came to the police department and filed a report, which was assigned to him. Detective Crosby set up an interview at Child Protect and told S.H.’s mother to take S.H. to Child Protect. Detective Crosby testified that he was present during the Child Protect interview. Detective Crosby, however, stated that he was not in the room with S.H. and the interviewer; rather, he was in another room observing the interview. Detective Crosby testified that he did not discuss the allegations with S.H. and that, typically, officers do not talk to children who are the victims of sexual abuse.
After the State rested its case-in-chief, D.W.H. moved for a judgment of acquittal, which the circuit court denied, and then presented the following defense: M.L.S. testified that she is D.W.H.’s sister and that, although S.H. testified that D.W.H. raped one of her sisters, D.W.H. had never raped her.
C.L.P. testified that she is D.W.H.’s sister and that D.W.H. had not raped her or done anything “sexually inappropriate to [her].”
D.O.H. testified that he is D.W.H.’s brother. D.O.H. stated that S.H. and D.W.H. appeared to have a normal relationship and that she did not appear to have any reluctance to be around her father.
D.W.H., Jr., testified that he is S.H.’s brother and D.W.H.’s son. D.W.H., Jr., stated that S.H. did not appear to have any fear or reluctance to be around her father. D.W.H., Jr., testified that he never observed D.W.H. doing anything inappropriate to S.H. D.W.H., Jr., further testified that S.H. did not tell him that D.W.H. did anything “bad or inappropriate to her.” (R. 260.) D.W.H., Jr., stated that S.H.’s reputation at school was “not very good for truthfulness.” (R. 263.) D.W.H., Jr., testified that he would not believe S.H. “if she raised her hand and put a hand on the Bible.” (R. 264.)
K.C. testified that she is S.H.’s cousin. K.C. testified that it appeared that S.H. and D.W.H. had a normal father-and-daughter relationship. K.C. testified that she never saw S.H. express any fear toward D.W.H. K.C. further testified that she observed affectionate hugs between S.H. and D.W.H. that were initiated by both S.H. and her father. K.C. testified that, to the best of her knowledge, S.H.’s *854 visitations with D.W.H. went well and S.H. demonstrated no reluctance to be around D.W.H. K.C. stated that S.H. did not have a good reputation for being a “truthful and honest person or student.” (R. 272.) K.C. testified that she would not believe statements S.H. made under oath.
S.J. testified that she was one of S.H.’s best friends. S.J. testified that she never saw S.H. exhibit any fear or reluctance to be around D.W.H. S.J. said that she saw S.H. and D.W.H. hug but nothing more.
D.W.H. testified that he had not had sexual relations of any type with S.H. D.W.H. testified that his visitation with S.H. stopped in 2008 and that he had to hire a lawyer to have the visitation resumed. D.W.H. stated that before he forced S.H. to resume visitation with him S.H. had made no allegations of sexual abuse. When asked why he thought S.H. may have made the allegations, D.W.H. replied, “[t]he only thing I can think of is she didn’t like the way I was living. I wasn’t making much money and her step-dad could provide way better than I can.” (R. 296.)
After D.W.H. presented his evidence, the State presented the following rebuttal testimony: J.S., S.H.’s mother, testified that one of D.W.H.’s sisters — M.L.S.—told her that D.W.H. had raped her when she was 14 or 15 years old.
After the State rested, D.W.H. moved for a judgment of acquittal, which the circuit court denied, and then both the State and D.W.H. presented closing arguments. The circuit court then charged the jury. The jury returned a verdict of guilty on four counts of first-degree sodomy. D.W.H. filed a motion for a new trial, which was denied. This appeal followed.
On appeal, D.W.H. raises two issues. We first address D.W.H.’s argument that his four convictions of first-degree sodomy were contrary to the great weight of the evidence at trial. This issue is without merit. As detailed above, S.H. testified to four specific incidents of D.W.H.’s engaging in deviate sexual intercourse with S.H. That testimony alone was sufficient to establish a prima facie case of four counts of first-degree sodomy; therefore, any inconsistency in the evidence was for the jury to resolve. See Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996) (“[T]he victim’s testimony alone is sufficient to establish a prima facie case of either rape or sexual abuse”); Chestang v. State, 837 So.2d 867, 871 (Ala.Crim.App.2001) (“““[T]he credibility of witnesses and the weight or probative force of testimony is for the [trier of fact] to judge and determine.’ ” ’ ” (Citations omitted.)).
D.W.H. also argues that the circuit court “erred in denying his request to present rebuttal witnesses in response to the testimony of the State’s ‘expert witness.’ ” (D.W.H.’s brief, p. 10.) Specifically, D.W.H. contends that he was denied his constitutional right to present a defense when he was precluded from calling a witness [1] who would have testified that the witness had had a sexual relationship with S.H. before the sexual-abuse examination by Dr. White. (D.W.H.’s brief, pp. 20-21.) D.W.H. further contends that the purpose of the witness’s testimony was to rebut the inference created by Dr. White’s testimony that S.H.’s hymenal tear was caused by D.W.H. when he allegedly engaged in anal intercourse with S.H.
The State contends, however, that the circuit court “did not abuse its discretion when it did not allow the testimony because the testimony was not relevant nor material and admission of the testimony *855 would have been in violation of Alabama’s rape-shield rule.” (State’s brief, p. 14.) See Rule 412, Ala. R. Evid.
The Alabama Supreme Court has held that “[a] trial court has broad discretion in determining the relevancy of evidence and whether that evidence is inadmissible because its prejudicial effect substantially outweighs its probative value, and its ruling on these issues will not be disturbed on appeal absent a clear showing of abuse of that discretion.” Ex parte Dennis, 730 So.2d 138, 143 (Ala.1999). Additionally, “when Rule 412 is applied to preclude the admission of particular exculpatory evidence, the constitutionality of its application is to be determined on a case-by-case basis.” Id. at 141.
Alabama’s rape-shield principle is set forth in Rule 412, Ala. R. Evid., which states, in pertinent part:
“(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit, or conspiracy to commit criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness ... shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or of other witnesses, except as otherwise provided in this Rule.
“(c) In any prosecution for criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness shall be introduced if the court, following the procedure described in section (d) of this Rule, finds that such past sexual behavior directly involved the participation of the accused.”
Thus, “Alabama Rule of Evidence 412 appears to exclude absolutely all evidence of the complaining witness’ past sexual behavior with the exception of when it is shown to have involved the participation of the accused.” Charles W. Gamble & Robert J. Goodwin, McElroy’s Alabama Evidence § 32.01 (6th ed.2009). In Dennis, however, the Alabama Supreme Court stated that “to read Rule 412 as requiring an absolute exclusion of all evidence of past sexual activity between the victim and third persons could, in some cases, violate a criminal defendant’s constitutional rights.” 730 So.2d at 141.
As a result, the Alabama Supreme Court noted that “other states and the federal courts ... have made express exceptions permitting the introduction of evidence of the victim’s sexual history where it is offered to rebut or to explain away scientific or medical evidence offered by the prosecution in a rape case.” Dennis, 730 So.2d at 141-42. The Supreme Court agreed with those courts, stating that the above-noted “exception is not only wise, but is constitutionally required in some cases in which the prosecution offers evidence to show that a physical injury or condition of the victim indicates that the defendant committed the offense of rape.” Id. at 142.
The record establishes that, at trial, D.W.H. proffered and argued the following, out of the presence of the jury:
“Judge, we would proffer ... that we intend to put on a witness who would testify that he has had sexual relationships with [S.H.] prior to the August 18, I think it was, 2009 examination by Dr. Penny White. He will testify that the sexual relationship was vaginal and thus we would say that under ... [Ex parte ] Dennis [, 730 So.2d 138 (Ala.1999),] that it would be admissible to show an explanation for Dr. White’s testimony that there was, and I don’t remember her exact language, a tearing, a cutting, a breaking of the hymen. I mean that was the essence of her testimony, that there was damage to the hymen.
*856 [[Image here]]
“And this witness’s testimony would go to give an alternative explanation or an alternative inference other than the one that the State has proferred. And, of course, the one that the State proffered was if there was tearing — the State has at least implied or wants the jury to infer that if there was tearing to the hymen or breaking of the hymen, it must have been done by the defendant. And under the Dennis case I think it says that ... the defendant has a constitutional right to put forth alternative explanations for that and that’s what we would be attempting to do, Judge.”
(R. 306-08.) The State objected, arguing:
“[Wje’re not here on who broke or why the hymen was tor[n], that’s not even an issue here. We’re here on whether [D.W.H.] committed four counts of sodomy, which is deviate sexual intercourse. And the testimony from Dr. White was not as to the defendant must have done it and we’re trying to infer that to the jury. It was her physical examination of the anal penetration and she did a complete physical examination and therefore told her results.
“Furthermore, according to Rule 412 of the Alabama Rules of Evidence, evidence relating to past sexual behavior of a victim cannot come in unless it’s past sexual behavior of the victim and the accused. And if it’s between the victim and the accused, there is a procedure that has to be followed.”
(R. 308-09.) The circuit court agreed with the State and concluded that the proffered testimony was inadmissible because D.W.H. was charged with sodomy, which is deviate sexual intercourse, and not rape. The circuit court ruled, therefore, that this distinction would “disallow that evidence based on Rule 412.” (R. 311-12.)
The Alabama Supreme Court has held:
“When one party opens the door to otherwise inadmissible evidence, the doctrine of ‘curative admissibility1 provides the opposing party with ‘the right to rebut such evidence with other illegal evidence.’ McElroy’s Alabama Evidence, § 14.01, p. 49 (5th ed.1996). ‘The law [is] that even though a party introduces evidence that may be immaterial or illegal, his opponent has the right to rebut such evidence and this right is unconditional.’ Clark v. State, 54 Ala.App. 183, 186, 306 So.2d 51, 54 (1974). ‘ “A party who has brought out evidence on a certain subject has no valid complaint as to the trial court’s action in allowing his opponent or adversary to introduce evidence on the same subject.” ’ Hubbard v. State, 471 So.2d 497, 499 (Ala.Crim.App.1984) (quoting Brown v. State, 392 So.2d 1248, 1260 (Ala.Crim.App.1980), cert. denied, 392 So.2d 1266 (Ala.1981)).”
Ex parte D.L.H., 806 So.2d 1190, 1193 (Ala.2001).
In D.L.H., the victim,
“B.N.G., who was 14 years old at the time of trial, testified that D.L.H. had accomplished each rape by ‘[sjticking his penis up my vagina.’ (R. 74.) She testified further that, after he did so, ‘[w]hite stuff ... came off his penis.’ (R. 77.) Thereafter, the prosecutor asked the following question:
“ ‘[Prosecutor]: Have you ever had any kind of sexual relations with anybody other than [D.L.H.]?
“‘[B.N.G.]: No.’
“(R. 85.) Defense counsel then sought to introduce evidence in the defendant’s case-in-chief to impeach B.N.G.’s testimony. Upon learning of defense counsel’s intention to introduce such evidence, the prosecutor moved in limine to prevent the admission of such evidence.
*857 The following discussion occurred outside the presence of the jury before the defendant began his case-in-chief:
“ ‘[Prosecutor]: Judge, we have learned through a proffer that [defense counsel] has made to us that he plans to possibly offer evidence about other sexual contact or sexual relations that may have been had by one of the victims, [B.N.G.], in this case. And we move, in limine, to — and object to that evidence being offered under the Rape Shield Law.
“ ‘[Defense counsel]: Your Honor, I understand the Rape Shield Law protection, but, it’s the Prosecution that opened the door when [B.N.G.] made — gave testimony that her only sex was with her father.
“‘[...•]
“‘[Defense counsel]: I have two witnesses that will testify as to the presence of the young lady with other males sneaking into windows, being present with her at different hours and different times through the course of a long period of time. These are people who know them, who know her and have lived with her.’
“(R. 136-42.) Ruling that the admission of the testimony was prohibited by the rape-shield law, Rule 412, Ala. R. Evid., the trial court granted the State’s motion in limine and prohibited the defendant from presenting the proffered testimony. (R. 143.)”
D.L.H., 806 So.2d at 1192. The Alabama Supreme Court concluded that
“the prosecutor’s opening the door to B.N.G.’s prior sexual history entitled D.L.H. to rebut and to impeach on the same point, if D.L.H., in fact, had rebutting evidence on the same point. D.L.H.’s proffer, however, did not show that he did have rebutting evidence on the same point. His proffer did not show that he had evidence that B.N.G. had experienced sexual intercourse with anyone but D.L.H. himself.”
806 So.2d at 1194.
In this case, like D.L.H., the State introduced evidence that S.H. had no prior sexual history. Specifically, in State’s Exhibit 5 — Dr. White’s letter to Detective Crosby — Dr. White stated that “[t]here is no history of consensual sex and no history of genital area injuries.” (C. 121.) That evidence — along with Dr. White’s testimony that S.H.’s hymen was torn and that vaginal trauma is present in about 30 percent of cases involving girls who allege anal penetration — created an inference that the hymenal tear was caused by D.W.H. when he allegedly committed the incidents of sexual abuse that S.H. testified to. As discussed above, however, D.W.H. proffered a witness who would have testified that he had a sexual relationship with S.H., including vaginal intercourse, which would have rebutted State’s Exhibit 5 — the letter stating that S.H. had no prior consensual sexual history; this testimony also would have provided an alternative explanation as to the cause of the hymenal tear. Thus, unlike the proffered evidence in D.L.H., D.W.H.’s proffer was sufficient to establish that S.H. had experienced sexual intercourse with someone other than D.W.H.
The evidence in State’s Exhibit 5 and Dr. White’s testimony regarding the cause of S.H.’s hymenal tear therefore opened the door to otherwise inadmissible evidence under Rule 412, Ala. R. Evid., and the circuit court improperly excluded the proffered evidence. See D.L.H., supra.
Furthermore, the circuit court’s exclusion of the proffered evidence was not harmless under the facts in this case. The *858 harmless-error rule provides, in pertinent part:
“No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, Ala. R.App. P. The Alabama Supreme Court has held that before a constitutional error can be held harmless, “ ‘the court must be able to declare a belief that it was harmless beyond a reasonable doubt.’ ” Ex parte Baker, 906 So.2d 277, 287 (Ala.2004) (citations omitted). As discussed above, S.H.’s testimony indicated that D.W.H. had had anal sexual intercourse with S.H. on four occasions. The State also introduced Exhibit 5, which indicated that S.H. “had no prior consensual sexual history.” Dr. White’s testimony corroborated S.H.’s testimony and indicated that S.H.’s hymenal tear could have resulted from anal penetration. Both S.H.’s testimony and Dr. White’s conclusion, however, could have been impeached and explained by the proffered testimony the circuit court excluded. Examination of this “entire cause” establishes that the exclusion of the witness’s testimony “has probably injuriously affected substantial rights of [D.W.H.].” Rule 45, Ala. R.App. P. Further, in this case we cannot “declare a belief that [the error] was harmless beyond a reasonable doubt.” Baker, supra.
For the foregoing reasons, the judgment of the circuit court is reversed, and this case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
WINDOM, P.J., and WELCH, KELLUM, and BURKE, JJ., concur.

. The witness is not identified in the record.