Carl Brad Ward and Kenneth Gregory Long were indicted for the capital murder of Jeanette Smith Little, in violation of §13A-5-40(a)(2), Code of Alabama 1975. The court granted Ward's motion for severance, and Ward's case was tried first. The jury found Ward guilty of the lesser-included offense of murder, and the court sentenced Ward to life imprisonment in the State penitentiary. Three issues are raised on appeal.
 I
Ward contends that the trial court erred in denying his motion for judgment of acquittal because the circumstantial evidence presented by the State at trial permitted an inference consistent with his innocence as well as his guilt.
The trial court's denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State,447 So.2d 199 (Ala.Cr.App. 1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnellv. State, 429 So.2d 662 (Ala.Cr.App. 1983). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust. Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979).
Circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Ward v. State,557 So.2d 848 (Ala.Cr.App. 1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So.2d 871 *Page 1192 
(Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979).
Testimony presented in the State's case showed that in late September 1990, the victim, Jeanette Smith Little, was arrested for DUI and was incarcerated for a short time in the Decatur city jail. While in jail she met Ward, who was also incarcerated, and who was serving as a jail trustee at the time. At some point the victim asked Ward to do her a favor by telephoning someone to help her get out of jail. As requested, Ward telephoned Mrs. Melba Dutton, Morgan County District Court Clerk, who in turn telephoned the jail and informed the jailer that Little was a property owner in Lawrence County and that she should be able to post her own property bond to get out of jail. Shortly thereafter, Little posted her own bond and was released from jail. As she was leaving, Little gave Ward her telephone number and $20 and asked him to call her if he needed anything.
Some time after Little was released from jail, a Decatur city jail inmate named Jack White overheard Ward and another inmate, Greg Long, talking in the kitchen of the jail. White heard one say to the other, "We should go see her when we get out; I bet she's got some money" or words to that effect.
On October 10, 1990, Little's body was found in her home on County Road 301, Hillsboro, by her son-in-law. She had been stabbed a number of times and had been dead for several days. The abraded condition of her left ring finger indicated that she had also been robbed of at least one ring from that hand. Forensic testimony indicated that the abrasion to Little's left ring finger was a post-mortem wound. Although the condition of Little's house was mostly undisturbed, one of the four chairs to her kitchen table was pulled out and slightly askew, and one set of linen napkins — one red and one blue — was missing from one of the napkin holder rings on the table. Little's Chrysler New Yorker automobile was found in the parking lot of a nearby Mayes Country Store. A red linen napkin was found in the rear floorboard of the car, but the matching blue linen napkin was not found.
Jo Anne Logston was working at the Mayes Country Store on the evening of October 5, 1990. She testified that she saw Little pull up in front of the store in her car, followed by an unidentified male in another car. According to Logston, the unidentified male got out of his car, got into the driver's side of Little's car, and he and Little drove away in the direction of Little's house. Logston was subsequently shown a photograph of Ward taken when he was booked at the Decatur city jail subsequent to his arrest on December 22, 1990. Logston stated both then and at trial that the hair of the individual in the photograph was similar in length to the hair of the unidentified male she observed meeting Little in the parking lot of the Mayes store on Friday evening, October 5, 1990.
John Kilbourn, a forensic scientist with the Alabama Department of Forensic Sciences, testified that during his investigation of the crime scene, he retrieved certain hairs from Little's automobile. He compared those hairs with hair samples that had been obtained from, among others, Ward, Greg Long, and Little. Kilbourn testified that several of the hairs found in Little's automobile matched Little's hair samples, that one of the hairs matched Greg Long's hair sample, and that none of the hairs matched Ward's hair sample.
Regina Higginbotham testified at trial that she was at her friend Sandra Poole's apartment at the Lodges Apartments in Decatur on the evening of October 5, 1990, and that Ward and her sister Donna, who was Ward's girlfriend, drove up to the apartment in Donna's car. Higginbotham testified that her sister asked if she could stay with them for awhile because Ward had some place to go and Donna could not go with him. Higginbotham further testified that at 6:00 that evening Ward was wearing long blue jeans and a button-up short-sleeved, plaid shirt. Higginbotham testified that when Ward and Greg Long returned to the apartment that night around midnight, they both acted very jittery, *Page 1193 
and Ward was wearing different clothes. According to Higginbotham, Ward told Donna that "they [he and Donna] had nothing to worry about, that he was going to get them a place and they would have somewhere to live."
According to Higginbotham, she, Donna, Ward, and Greg Long all went over to Long's apartment, and that while they were there, Ward mixed himself a drink with a Cola soft drink and a large bottle of Canadian Mist blended whiskey. Shortly thereafter, Higginbotham decided she was ready to go home, and she went out to sit in Donna's car. According to Higginbotham, Ward came out a few minutes later and picked up a dark bluish-colored bundle out of the back seat floor-board of Donna's car and took it with him back up to Long's apartment. Higginbotham and her sister Donna then left in Donna's car.
James Williams testified that on the night of October 5, 1990, he was driving a cab for the Yellow Cab Company in Decatur and that he received a dispatch to pick up a party at the Courtyard Apartments in Decatur at approximately 6:00 on the morning of October 6, 1990. Upon arriving at the apartments, he picked up two white males — one of whom he identified as Ward and the other as Greg Long — who asked him to take them to Stonegate Apartments. During the course of the cab ride, Ward and Long showed Williams two rings, one a ring guard with two triangular shaped clusters of diamonds on either side, and the other a football-shaped cluster of diamonds with a blue stone in the center. According to Williams, Long asked him if he wanted to buy the rings and when Williams declined, Ward held out his hand and retrieved the rings. Shortly thereafter, Ward gave Williams the ring with the blue stone to pay for his $10 cab fare. Williams subsequently pawned the ring at Decatur Pawn Shop for $30. The ring received by Williams from Ward was identified by Williams at trial as the same ring which was marked and introduced into evidence as State's Exhibit # 52.
Mark Edmonson testified at trial that Ward had also attempted to sell him two rings on Saturday, October 6, 1990. Edmonson identified one of the rings Ward attempted to sell him as being the same ring marked and introduced into evidence as State's Exhibit # 53. He identified the other ring Ward attempted to sell him as being the same ring depicted in the photograph which was marked and introduced into evidence as State's Exhibit # 56. Edmonson's girlfriend, Dena Burleson, testified that Ward said that he was trying to sell the rings to pay the doctor bills of his pregnant wife.
Gail Rainwater testified that she was part owner of Rainwater's Jewelry Store located between Decatur and Moulton on Gordon Terry Parkway. She testified at trial that Little had been a customer of hers for several years prior to her death. She further testified that State's Exhibit # 53 was a ring that Little had worn on the little finger of her right hand.
Finally, Mike Ball, an investigator with the Alabama Bureau of Investigation, identified State's Exhibit # 53 as being the actual ring he had received from Mark Edmonson and Dena Burleson. Ball also identified State's Exhibit # 52 as being the actual ring he had received from the Decatur Pawn Shop, where it had been pawned by James Williams.
Ward contends that the circumstantial evidence set forth above can reasonably be reconciled with the theory that Greg Long killed Jeanette Little, returned to Decatur, met with Ward for the purpose of going to get narcotics and, while en route to a drug dealer, permitted Ward to keep two of the rings taken from the victim.
Applying the appropriate standards of review, we find that there existed legal evidence, albeit circumstantial, before the jury at the time the motion for judgment of acquittal was made from which the jury by fair inference could find Ward guilty. In particular, the circumstantial evidence supporting an inference of guilt included 1) the testimony of Jack White that Ward and Long discussed going to see the victim when they got out of jail because she had *Page 1194 
money; 2) the testimony of Jo Anne Logston that an unidentified male got into the car with the victim and drove in the direction of the victim's house on the night of the murder; 3) the forensic testimony that one of the hairs found in the victim's abandoned car matched Long's hair samples; 4) the testimony of Regina Higginbotham that Ward left her friend's apartment at approximately 6:00 on the night in question and returned around midnight accompanied by Long, that Ward was very nervous when he returned to the apartment, that Ward had changed clothes some time after leaving the apartment at 6:00 p.m. but before returning to the apartment at midnight, and that Ward picked up a dark bluish-colored bundle out of the back seat floorboard of Donna's car and took the bundle with him to Long's apartment after midnight on the night in question; 5) the testimony that both a blue and a red linen napkin were missing from the victim's kitchen table, that the red linen napkin was found in the victim's car, but that the blue linen napkin was not found; 6) the testimony of the cab driver that on the morning of October 6, 1990, Ward and Long tried to sell him two women's rings and that Ward gave him one of the rings as cab fare; 7) forensic testimony that the left ring finger of the victim was abraded and that no rings were found on the victim's fingers; 8) the testimony of Mark Edmonson that Ward attempted to sell him two women's rings on the morning of October 6, 1990; and 9) the testimony of the victim's jeweler that one of the rings offered to Edmonson by Ward belonged to the victim.
Because we believe that a jury could find that this evidence excluded every reasonable hypothesis except that of Ward's guilt in this cause and because there was sufficient evidence that Ward had the motive, the means, and the opportunity to commit the murder, Ward's motion for judgment of acquittal was properly denied.
 II
Ward contends that the trial court erred when it refused the following written requested charges concerning circumstantial evidence:
 "33. Before you should convict the accused in this case, the hypothesis of guilt should flow naturally from facts proved and be consistent with all of them."
 "31. Where a conviction for a criminal offense is sought upon circumstantial evidence alone, the State must not only show, by preponderance of the evidence and beyond a reasonable doubt, that the alleged facts and circumstances are true, but they must be such facts and circumstances as are absolutely incompatible upon any reasonable hypothesis other than that of the guilt of the accused."
A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case. Coon v. State, 494 So.2d 184
(Ala.Cr.App. 1986). When requested charges are either fairly and substantially covered by the trial judge's oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges. Ex parte Wilhite, 485 So.2d 787 (Ala. 1986).
We have reviewed the trial court's lengthy charge to the jury on the issue of circumstantial evidence and conclude that the trial court substantially covered the two specific charges requested by Ward. Hence, the trial court did not err when it refused to give Ward's requested charges 31 and 33.
 III
Ward contends that the prosecutor's references to him in closing argument as being a "crack-head" and a "cold-blooded killer" were not legitimate inferences from the evidence adduced at trial but were designed to prejudice the jury against him and influence their deliberations.
It is axiomatic that only matters that are timely raised in the trial court and as to which adverse rulings are issued are preserved for appellate review. Maul v. State, 531 So.2d 35
(Ala.Cr.App. 1987). *Page 1195 
Ward did not raise any form of an objection to the prosecutor's closing argument in the trial court. Accordingly, appellate review of the claim raised herein is procedurally barred. We note that had this issue been properly preserved for review, the prosecutor's characterizations of Ward during closing argument were reasonable inferences based on facts brought out at trial. Brown v. State, 374 So.2d 391
(Ala.Cr.App.), aff'd, 374 So.2d 395 (Ala. 1979).
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
The judgment of the circuit court is affirmed.
AFFIRMED.
All the Judges concur.