KELLUM, Judge.
The appellant, Yahudah Israel, was indicted by a Marengo County grand jury for one count of rape in the first degree, a violation of § 13A-6-61(a)(l), Ala.Code 1975, and one count of rape in the second degree, a violation of § 13A-6-62(a)(l), Ala.Code 1975. Following a jury trial, Israel was convicted of first-degree rape and second-degree rape as charged in the indictment. The circuit court sentenced Israel to 12 years’ imprisonment for his first-degree rape conviction. The circuit court did not, however, impose a sentence for Israel’s second-degree rape conviction.
The evidence presented at trial established the following pertinent facts. L.W. was born on January 8, 1996; at the time of trial, L.W. was 16 years old and in the 10th grade. L.W. lives in Demopolis with her mother, M.N., and her siblings. L.W. often takes care of her siblings while M.N. works. Israel was born on February 7, 1959, and is M.N.’s boyfriend; he is the father of three of L.W.’s siblings. L.W. first met Israel when she was three years old and attended the Small Memorial Amazon Church where Israel served as a pastor. Israel later became pastor at the “Assembly of Yahweh” church. (R. 234.) While Israel was in a relationship with M.N., he was married to another woman. Israel kept clothes at M.N.’s house where he would frequently spend the night. Israel’s religious beliefs provided that “you can have more than one woman or wife or female in your life to further your family.” (R. 331.)
On April 16, 2008, L.W. — who was 12 years old at the time — was at home with her siblings while M.N. was at work. At some time between 7:00 p.m. and 8:00 p.m., Israel arrived at M.N.’s home, went into M.N.’s bedroom and closed the door. L.W. was in a bedroom she shared with her half sister — a two-year-old — who was asleep on the upper bunk of their bunk beds. L.W. testified that she was heading to the bathroom to take a shower when Israel came into her room. Israel asked L.W. if the “kids” were asleep and confirmed that L.W.’s half sister was, in fact, asleep in the top bunk.
When L.W. turned to go to the bathroom, Israel grabbed L.W. “by the neck and onto the shoulders.” (R. 221.) L.W. testified that Israel said nothing and had a “straight look.” (R. 222.) L.W. attempted to push Israel away, but was unsuccessful. Israel then kicked L.W. near the stomach with his knee, causing L.W. to fall and hit the back of her head on the bunk bed. L.W. fell onto the bed and Israel “was on top of [her] and all his weight was on [her].” (R. 224.) L.W. attempted to poke her thumbs in Israel’s eyes but was unsuccessful. Israel choked L.W. with his hands and told L.W. that “it would get worse” if she continued fighting him. (R. 225.) L.W. began to feel “lightheaded” *98 and Israel stopped choking her. Israel then took off L.W.’s pants, unzipped his own pants to expose his penis, put both of his hands behind L.W.’s back, pulled L.W. toward him, and inserted his penis into L.W.’s vagina. After approximately five minutes, Israel pulled his penis out of L.W.’s vagina, “fixed his pants,” and went back to M.N.’s room. (229.) L.W. went into the bathroom where she observed blood coming from her vagina. L.W. then took a shower because she “was dirty.” (R. 280.)
When M.N. returned home that evening, L.W. did not tell her mother what had happened because L.W. did not think M.N. would believe her. The next morning L.W. woke up in pain and sore. L.W. observed blood on her sheets and washed the sheets. L.W. testified that it did not occur to her to preserve the sheets as evidence. L.W. did not report the rape to members of her church and did not seek medical treatment following the rape.
Israel continued his relationship with L.W.’s family after the rape. On one occasion, Israel forced L.W. to remove her clothes and told L.W. that she was “fat and that [she] couldn’t be his woman.” (R. 237.) Israel told L.W. that she needed to lose weight because she “couldn’t enter the promised land like that.” (R. 240.) L.W. began pulling her hair out because of the stress. L.W. testified that she was depressed and that pulling her hair out was the only thing that comforted her.
Approximately a year and a half after the rape, L.W. revealed the details of the rape to C.G., who was a family friend and a school nurse in neighboring Sumter County. L.W. communicated with C.G. through the social media Facebook. L.W. also wrote C.G. a letter and spoke with C.G. on the telephone. In her letter and telephone calls to C.G., L.W. revealed some of the details of the rape and identified Israel as the man who had raped her. C.G. subsequently informed M.N. about the rape. When M.N. asked L.W. if Israel had raped her, L.W. responded in the affirmative and M.N. “[f]ell on the ground.” (R. 249.) Local law enforcement and officials with the Alabama Department of Human Resources (“DHR”) were immediately contacted.
On November 14, 2009, Demopolis Police Chief Tommie Reese met L.W. at her aunt’s house and asked L.W. to write a statement. L.W. gave a statement at police headquarters where she also spoke with Marengo County DHR caseworker, Shandra Young-Cowan. Young-Cowan developed a safety plan that allowed L.W. to remain at her aunt’s house pending further investigation. Young-Cowan then conducted an investigation during which she interviewed Israel and others who knew both Israel and L.W. Young-Cowan found no inconsistencies in the statement given by L.W. and concluded that there was sufficient credible evidence to indicate that L.W.’s allegations were true. After Young-Cowan generated her report concluding that there was sufficient evidence to indicate that a rape occurred, Israel requested an independent administrative review of Young-Cowan’s determination. The independent panel reviewing the report also concluded that there was sufficient credible evidence to indicate that L.W.’s allegations were true.
Young-Cowan referred L.W. to a licensed family therapist and counselor named Janie Plaxco. Plaxco first met with L.W. on December 1, 2009. By her third therapy session with Plaxco, L.W. described the specific details of the rape. L.W. drew on a diagram to help depict the incident. L.W. informed Plaxco that Israel placed his penis in her vagina in her bedroom and that it was painful. At the time of trial, Plaxco had met with L.W. for *99 26 therapy sessions over the course of 3 years. Plaxco testified that L.W. was not inconsistent with her description of the incident during her multiple therapy sessions.
Demopolis Police Detective Tim Soro-nen conducted an initial interview with Israel. Although Israel was not under arrest, Detective Soronen informed Israel of his Miranda[1] rights, and he waived them. During the interview, Israel described his religious beliefs to Detective Soronen, including his classification of M.N. as a “woman” who was “outside the marriage.” (R. 331.) Israel denied that he raped L.W. and claimed that “it was a lie... [b]ecause [M.N. and L.W.] were mad at him for some reason.” (R. 333.)
After both sides rested, the circuit court instructed the jury on the applicable principles of law. The jury returned a verdict finding Israel guilty of rape in the first degree and rape in the second degree. This appeal followed.
I.
Israel first contends that the circuit court abused its discretion when it granted the State’s motion in limine to exclude evidence under the rape-shield statute, § 12-21-203, Ala.Code 1975, which is now encompassed in Rule 412, Ala. R. Evid., of L.W.’s prior sexual conduct. Specifically, Israel contends that the circuit court’s ruling deprived him of his right to cross-examine L.W. regarding her motive for making false allegations against him. In response to the State’s motion in limine, Israel informed the circuit court of his concern regarding L.W.’s motive for making the accusations, stating:
“And in this particular case we expect that the evidence might be that [L.W.’s] mother was putting a lot of pressure on [L.W.] about different things. The mother thought [L.W.] was a virgin. [The mother] found it out that [L.W.] was not a virgin, and in less than a week after this came to light, this is when she made this report to the Demopolis Police Department even though it had happened years ago. But once this came to light that [L.W.] had had sex, this is when [L.W.] went down and made the accusation.”
(R. 195-96.)
“The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte hoggins, 771 So.2d 1093, 1103 (Ala.2000).
“To be competent and admissible, evidence must be relevant — that is, evidence must tend to prove or disprove the issues before the jury. Rule 401, Ala. R. Evid. The determination of the relevancy and admissibility of evidence rests largely in the sound discretion of the trial judge. The trial judge is obliged to limit the evidence to that evidence that would be necessary to aid the fact-finders in deciding the issues before them, and to preclude evidence that is too remote, irrelevant, or whose prejudice outweighs its probative value. Loggins v. State, 771 So.2d 1070, 1077-78 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000).”
Harrington v. State, 858 So.2d 278, 293 (Ala.Crim.App.2002).
Rule 412, Ala. R. Evid., states, in pertinent part:
“(b) In any prosecution for criminal sexual conduct or for assault with intent to commit, attempt to commit, or conspiracy to commit criminal sexual con *100 duct, evidence relating to the past sexual behavior of the complaining witness, as defined in section (a) of this rule, shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or of other witnesses, except as otherwise provided in this rule.
“(c) In any prosecution for criminal sexual conduct, evidence relating to the past sexual behavior of the complaining witness shall be introduced if the court, following the procedure described in section (d) of this rule, finds that such past sexual behavior directly involved the participation of the accused.”
Although the language in Rule 412, Ala. R. Evid., appears to exclude all evidence of the complaining witness’s past sexual behavior with the exception of behavior directly involving the accused, the Alabama Supreme Court in Ex parte Dennis, 730 So.2d 138, 143 (Ala.1999), recognized that “to read Rule 412 as requiring an absolute exclusion of all evidence of past sexual activity between the victim and third persons could, in some cases, violate a criminal defendant’s constitutional rights.” Therefore, our Supreme Court recognized an exception in cases where the introduction of evidence of the victim’s sexual history “is offered to rebut or to explain away scientific or medical evidence offered by the prosecution in a rape case.” Dennis, 730 So.2d at 141-42. The Court observed that to allow such evidence “is constitutionally required in some cases in which the prosecution offers evidence to show that a physical injury or condition of the victim indicates that the defendant committed the offense of rape” and that the constitutionality of the application of Rule 412 “is to be determined on a case-by-case basis.” Dennis, 730 So.2d at 141-42.
In addition to the exception created in Dennis to rebut or explain away scientific or medical evidence, the rule of exclusion set forth in Rule 412 does not preclude the admission of the victim’s pri- or allegations of sexual assault when a showing is made that these collateral allegations were false. Peeples v. State, 681 So.2d 236 (Ala.1995). Further, the doctrine of “curative admissibility” may require the admission of otherwise inadmissible evidence in circumstances where the State “opens the door” by introducing evidence of the victim’s prior sexual conduct. See, e.g., D.W.H. v. State, 103 So.3d 850 (Ala.Crim.App.2012) (noting that the State’s admission of evidence that victim had no prior sexual history opened the door to introduction of testimony of witness that he and the victim had engaged in a sexual relationship).
In the instant case, Israel sought to introduce evidence of L.W.’s prior sexual conduct for the sole purpose of establishing L.W.’s motive for reporting the rape. Israel’s argument that L.W. reported the rape to police once her mother learned of L.W.’s past sexual activity amounted to nothing more than conjecture that L.W. ultimately lied to police when she reported the rape. Without more, Israel was not justified in going on a fishing expedition at the expense of a young girl’s psyche. Accordingly, the circuit court correctly determined that Rule 412 prohibited Israel from questioning L.W. concerning whether she had had sexual relations before the rape. No basis for reversal exists as to this issue.
II.
Israel next contends that the circuit court abused its discretion by excluding as evidence a two-page printout of information from L.W.’s account on the Facebook social-media site because, he argues, “the exhibit demonstrated her true personality of being brash and sexual.” *101 (Israel’s brief, p. 38.) Specifically, Israel contends that L.W.’s image of herself was directly relevant to the ease because the entire prosecution rested on L.W.’s truthfulness.
At trial, defense counsel sought to admit copies of four pages printed from L.W.’s Facebook page. Two of the pages that were entered into evidence without objection by the State consisted of a Facebook survey titled “Survey Amateur” completed by L.W. wherein she answered questions such as “Do you sing?” and “Do you swear?” (C. 44.) In the survey, L.W. identified her “weakness” as “tellin’ the truth.” (C. 44.) The remaining two pages were printouts of L.W.’s Facebook page containing random postings by L.W. regarding dating and other topics. The State objected to the admission of the remaining two pages on the basis that the evidence was irrelevant, and the circuit court sustained the objection.
In Barrett v. State, 918 So.2d 942 (Ala.Crim.App.2005), this Court stated:
“ ‘The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.’ Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000).
“ ‘To be competent and admissible, evidence must be relevant — that is, evidence must tend to prove or disprove the issues before the jury. Rule 401, Ala. R. Evid. The determination of the relevancy and admissibility of evidence rests largely in the sound discretion of the trial judge. The trial judge is obliged to limit the evidence to that evidence that would be necessary to aid the fact-finders in deciding the issues before them, and to preclude evidence that is too remote, irrelevant, or whose prejudice outweighs its probative value. Loggins v. State, 771 So.2d 1070, 1077-78 (Ala.Crim.App.1999), aff'd, 771 So.2d 1093 (Ala.2000).’
“Harrington v. State, 858 So.2d 278, 293 (Ala.Crim.App.2002).”
918 So.2d at 946.
In this case, the circuit court admitted into evidence the Facebook survey in which L.W. identified her weakness as telling the truth. The admission of the Face-book survey was arguably relevant because it commented on L.W.’s general truthfulness. However, the random comments contained in the two pages from L.W.’s Facebook page regarding dating had no tendency to prove or disprove the issue before the jury, namely, whether L.W. was raped by Israel. Accordingly, the circuit court did not exceed its discretion in holding that the two-page printout of L.W.’s Facebook page was irrelevant and inadmissible.
III.
Israel further contends that the circuit court abused its discretion in denying his motion for a judgment of acquittal because, he argues, the State presented insufficient evidence to establish a prima facie case of rape. Israel specifically cites the lack of physical evidence to corroborate L.W.’s rape allegation and contends that the “entire case against [him] rests upon her uncorroborated allegation.” (Israel’s brief, p. 34.)
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim. *102 App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“ ‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
Pursuant to § 13A-6-61(a)(l), Ala. Code 1975, a person commits the offense of rape in the first degree if “[h]e or she engages in sexual intercourse with a member of the opposite sex by forcible compulsion.” “A person commits the crime of rape in the second degree if[, b]eing 16 years old or older, he or she engages in sexual intercourse with a member of the opposite sex less than 16 and more than 12 years old.” § 13A-6-62(a)(1), Ala.Code 1975. The definition of sexual intercourse is found in § 13A-6-60, Ala.Code 1975: “Such term has its ordinary meaning and occurs upon any penetration, however slight; emission is not required.” It is well settled that the testimony of the victim of a sexual offense is sufficient to establish a prima facie case of rape. See, e.g., Shouldis v. State, 953 So.2d 1275, 1285 (Ala.Crim.App.2006) (“The victim’s testimony alone is sufficient to establish a pri-ma facie case of either rape or sexual abuse.”); Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996) (same); Patterson v. State, 455 So.2d 284, 284 (Ala.Crim.App.1984) (same).
Despite Israel’s contention to the contrary, the State presented sufficient evidence to establish that Israel raped L.W. The evidence presented at trial established that Israel, who was 49 years old at the time, entered the bedroom that L.W.— then 12 years old — shared with her half sister and grabbed L.W. by the neck and the shoulders. L.W. tried to push Israel away, but Israel kicked L.W. and caused L.W. to fall and hit the back of her head. After L.W. fell on the bed, Israel got on top of her and choked L.W. with his hands. *103 L.W. attempted to poke her thumbs in Israel’s eyes without success. Israel then removed L.W.’s pants, unzipped his own pants, and inserted his penis into L.W.’s vagina. L.W. testified that she bled after-wards. L.W. later revealed details of the rape to a family friend, who then contacted law enforcement. In addition to the investigation conducted by law enforcement, DHR conducted its own investigation and concluded that sufficient credible evidence existed to indicate that L.W.’s allegations were true. DHR’s findings were later confirmed by an independent administrative review. In therapy sessions that followed, L.W. consistently recounted details of the rape. Given the evidence presented at trial and the standard by which this Court reviews that evidence, we cannot say that the evidence was insufficient to support Israel’s convictions for rape in the first degree and rape in the second degree. Although Israel’s convictions for first-degree rape and second-degree rape arose out of a single incident, Israel could be convicted of both counts as charged in the indictment. See Burtram v. State, 733 So.2d 921 (Ala.Crim.App.1998) (recognizing that charges of first-degree rape under § 13A-6-61 and second-degree rape under § 13A-6-62 arising out of a single incident are distinct offenses for which a defendant can be convicted and sentenced). Therefore, the circuit court did not abuse its discretion by denying Israel’s motion for a judgment of acquittal.
IV.
Israel was convicted of one count of rape in the first degree and one count of rape in the second degree. The record indicates, however, that the circuit court declined to sentence Israel for his second-degree rape conviction after defense counsel argued to the circuit court “that in this particular case under these sets of facts that rape second would be a lesser included offense of rape one and that the convictions on both counts are improper.” (R. 436.) Citing Burtram v. State, supra, the State argues in its brief on appeal that we should remand this case for the circuit court to impose a sentence on Israel’s conviction for second-degree rape.
In Burtram, this Court rejected an ineffective-assistance-of-counsel claim that was based on counsel’s informing the defendant, before entry of a guilty plea, that he could be found guilty of both first-degree rape under § 13-6-61, Ala.Code 1975, and second-degree rape under § 13A-6-62, Ala.Code 1975. In so holding, this Court stated:
“ ‘Although in limited circumstances, second degree rape can be a lesser included offense of first degree rape, see Ex parte Washington, 571 So.2d 1062 (Ala.1990), ... generally it is not a lesser included offense, see Allen v. State, 472 So.2d 1122 (Ala.Cr.App.1985); Ross v. State, 529 So.2d 1074 (Ala.Cr.App.1988).’ Ellis v. State, 686 So.2d 1265, 1266 (Ala.Cr.App.1996). Burtram did not offer any facts or caselaw in support of his argument that counsel’s assertion that Burtram could be convicted of both first- and second-degree rape was error. Therefore, Burtram did not prove that trial counsel’s performance fell below the standard enunciated in Strickland [v. Washington, 466 U.S. 668 (1984) ].
“Moreover, counsel correctly informed Burtram that rape by forcible compulsion under 13A-6-61(a)(l), Ala.Code 1975, (Count I), is a separate offense from rape by a male 16 years old or older of a female who was less that 16 but more that 12 years old, 13A-6-62(a)(1) (Count II). Burtram was charged in pertinent part as follows:
“ ‘Count One: ... Randall Burtram ... a male, did engage in sexual intercourse with [K.A.], a female, by fore *104 ible compulsion, in violation of § 13A-6-61 of the Code of Alabama.
“ ‘Count Two: ... Randall Burtram ... a male, did engage in sexual intercourse with [K.A.], a female, who was less than sixteen years of age and more than twelve years of age, the said Randall Burtram ... being sixteen years of age or older and at least two years older than the said [K.A.], in violation of § 13A-6-62 of the Code of Alabama.’
“C.R. 5.
“By statute, rape in the first degree is defined as follows:
“ ‘(a) A male commits the crime of rape in the first degree if:
“ ‘(1) He engages in sexual intercourse with a female by forcible compulsion; or
“ ‘(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being physically helpless or mentally incapacitated; or
“ ‘(3) He, being 16 years or older, engages in sexual intercourse with a female who is less than 12 years old.’
“§ 13A-6-61, Ala.Code 1975.
“Rape in the second degree is defined as follows:
“ ‘(a) A male commits the crime of rape in the second degree if:
“ ‘(1) Being 16 years old or older, he engages in sexual intercourse with a female less than 16 and more than 12 years old; provided, however, the actor is at least two years older than the female.
‘“(2) He engages in sexual intercourse with a female who is incapable of consent by reason of being mentally defective.’
“§ 13A-6-62, Ala.Code 1975.
“Here, each count charged a crime requiring proof of a statutory element not contained in the other. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Count I required proof of forcible compulsion not required for Count II. Count II required the proof of the ages of the perpetrator and the victim, which Count I did not. Under Blockburger, even though the two counts in the indictment were based on one incident of rape, Bur-tram could properly be convicted for both counts ‘notwithstanding a substantial overlap in the proof offered to establish the crimes,’ Iannelli v. United States, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616, (1975).
“Our rationale is the same as that applied in determining that a defendant charged and convicted of multiple counts of capital murder based partly on the same act does not violate the prohibition against double jeopardy. In those cases we stated that:
‘“[T]he test in determining whether the charges run afoul of the Double Jeopardy Clause is whether each crime contains a statutory element not contained in the other. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); See also United States v. Dixon, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)(a plurality of the United States Supreme Court reaffirmed the Block-burger test as the sole criterion for judging double jeopardy claims); Seritt v. State, 647 So.2d 1 (Ala.Cr.App.), cert. denied, 647 So.2d 1 (Ala.1994).’
“Williams v. State, 710 So.2d 1276, 1321, (Ala.Cr.App.1996), aff'd, Ex parte Williams, 710 So.2d 1350 (Ala.1997)(con-victions upheld for the capital offense of murder committed during the course of a robbery in the first degree, and the capital offense of murder of two or more *105 persons by one act or pursuant to one scheme or course of conduct); Seritt v. State, 647 So.2d 1 (Ala.Cr.App.1994) (convictions on two counts of capital murder arising out of the killing of one person upheld: commission of an intentional killing when defendant had previously been convicted of murder in the preceding 20 years and intentional killing during the course of first-degree burglary); Powell v. State, 631 So.2d 289 (Ala.Cr.App.1993) (convictions on two counts of capital murder arising out of the killing of one person upheld: murder during a robbery and murder during a burglary); Merriweather v. State, 629 So.2d 77 (Ala.Cr.App.1993) (convictions on two counts of capital murder arising out of the killing of one person upheld: murder during the commission of a robbery in the first degree and murder during the commission of burglary); Ex parte Haney, 603 So.2d 412 (Ala.1992) (convictions on two counts of capital murder arising out of the killing of one person upheld: murder for hire and murder during a robbery); Stewart v. State, 601 So.2d 491 (Ala.Cr.App.1992), aff'd in part, rev’d in part, 659 So.2d 122 (Ala.1993) (convictions on two counts of capital murder arising out of the killing of one person upheld: murder during the course of a burglary and murder during the course of a kidnapping); Ex parte Henderson, 583 So.2d 305 (Ala.1991) (murder during a robbery and murder committed for pecuniary gain); Ex parte McWilliams, 640 So.2d 1015 (Ala.1993), aff'd, after remand, 666 So.2d 90 (Ala.1995) (two counts of murder made capital because murder occurred during a robbery and one count of murder made capital because murder occurred during a rape.)
“We acknowledge that a case more ripe for our discussion would be a case in which the defendant had been charged with, and convicted of, both forcible rape and statutory rape of the same victim. However, our intention is to make it perfectly clear that Alabama has organized its laws so that first-degree rape under § 13A-6-61 and second-degree rape under § 13A-6-62 are distinct offenses. Therefore, Burtram could have been convicted of, and sentenced for, each count charged in the indictment even though each count arose from a single incident. Counsel’s advice to Burtram was correct; therefore, counsel’s performance was not ineffective.”
Burtram, 733 So.2d at 922-24 (footnote omitted).
Although our holding in Burtram addressed the validity of advice given by counsel before a guilty plea, the analysis underlying that holding is dispositive of the issue before us in this particular case. Indeed, the instant case is one that is directly referenced in Burtram as a case “more ripe for our discussion,” i.e., a case in which the defendant has been charged with, and convicted of, both forcible rape and statutory rape of the same victim. 733 So.2d at 924.
Israel was indicted for, and convicted of, rape in the first degree under § 13A-6-61(a)(1) and rape in the second degree under § 13A-6-62(a)(l). First-degree rape under § 13A-6-61(a)(l) requires, as an essential element, that the defendant accomplish the rape by forcible compulsion. Second-degree rape under § 13A-6-62(a)(1) requires, as essential elements, that the defendant be 16 years old or older, that the victim be less than 16 and more than 12 years old, and that the defendant be at least 2 years older than the victim. Rape in the first degree under § 13A-6-61(a)(l) does not. Thus, first-degree rape under § 13A-6-61 and second-degree rape under § 13A-6-62 are *106 distinct offenses that do not run afoul of the Blockburger double-jeopardy principles. Therefore, Israel’s convictions for rape in the first degree and rape in the second degree must stand, and the circuit court’s refusal to sentence Israel on his second-degree rape conviction is error.
Accordingly, this case is remanded to the circuit court with instructions that the circuit court hold a new sentencing hearing and sentence Israel on his conviction for rape in the second degree. The record shall be certified and transmitted to this Court at the earliest possible date and by no later than 28 days from the date of this opinion.
AFFIRMED AS TO CONVICTIONS; REMANDED WITH INSTRUCTIONS AS TO SENTENCING. 
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).