BURKE, Judge.
Robert Ñ. Culp, Jr., appeals his conviction for domestic violence in the second, degree, a violation of § Í3A-6-131, Ala. Code 1975, and his resulting sentence of five years’ imprisonment.[1] The circuit court suspended the term of imprisonment and placed Culp on probation for three years. The circuit court also ordered .Culp to pay a $1,000 fíne, court costs, restitution, and to make a $750 contribution to the Alabama Crime Victims Compensation Fund. The circuit court further ordered *380 Culp to have no contact with the victim in the case.
The evidence admitted during Culp’s trial tended to establish that on April 8,2008, Brandis Hand was living'with Culp, her boyfriend, in 'Henry County. Hand was planning to go to a Walmart department store when Culp told her that he would not allow 'her to go because she was “always spending his money.” (R. 180.) Hand told' Culp that she was leaving him and taking her dog with her. Hand picked up the dog and began opening the front door when Culp reached over Hand’s head and pushed the door closed. Culp struck Hand on the- left side of her jaw[1] with his fist. Hand began bleeding from her mouth and she was unable to talk because her jaw “was cocked over.” (R. 221.) Culp told Hand that she - had bitten her tongue. Hand attempted to get Culp to dial emergency 911, but he would not because he said that “[h]e would go to jail.” (R. 223.) Hand wrote notes to communicate with Culp, and, while Culp was in his bedroom, she left their trailer and drove to the home of her friend Chase Jones. Jones drove Hand to the hospital.
Dr. Greg Bess, a maxillofacial surgeon, operated on Hand’s jaw. When Dr. Bess first saw Hand, “she had some swelling, and her bite was way off. Her jaw was off to the side.” (R. 194'.) Hand told Bess that she had injured' herself when she fell down while walking her dog. Dr. Bess determined that'Hand had two fractures of her lower jaw; one fracture was on the lower left side and the other fracture was on the lower right side. Dr. Bess used titanium plates and screws to put Hand’s jaw back “in its normal position.” ■ (R. 198.)
Culp called his friends Wally Howerton and Jimmy Danzby to testify about a trip that Hand and Culp had taken to Atlanta with several of their friends in July 2008. Culp also called Jason Selva, a narcotics investigator with the Henry County Sheriffs Office, who testified about his interactions with Hand when she turned herself in on a warrant for theft of property in the first degree. Selva also testified that Hand’s reputation for violence was bad, as was her reputation for truth and veracity.
I.
.Culp first argues that the circuit court erred when it denied his motion for judgment of acquittal. Culp asserts that the State failed to establish that he intentionally caused the injuries suffered by Hand and that Hand’s testimony was not credible.
A.
Culp contends that the circuit court committed error when it denied his motion for judgment of acquittal because the State failed to prove a prima facie'case of second-degree domestic violence because it did not prove that he “intentionally caused the serious injuries sustained by the alleged victim.” (Culp’s brief, p. 11.)
. “‘The issue of the sufficiency of the evidence is preserved for review by a defendant’s motion for a judgment of acquittal that is entered at the end of the state’s case, at the close of the evidence .., or -after the verdict is entered.’ Zumbado v. State, 615 So.2d 1223, 1241 (Ala.Crim.App.1993).
“‘“•‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Crim.App.1978). In applying this standard, this court will determine only if legal evidence- was presented *381 from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Crim.App.1983).’
“Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007) (quoting Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), quoting in turn Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992) (citations omitted)).
“ ‘ “In determining the sufficiency of the evidence to sustain the conviction, this Court must, accept as true the evidence, introduced .by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.” Faircloth v. State, 471 So.2d 485, 489 (Ala.Crim.App.1984), affirmed, Ex parte Faircloth, [471] So.2d 493 (Ala.1985).
[[Image here]]
“““The role of the appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978). An appellate court may interfere with the jury’s verdict only where it reaches ‘a clear conclusion . that the finding and judgment are wrong.’ Kelly v. State, 273 Ala. 240, 244, 139 So.2d 326 (1962)... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). ‘[Wlhere there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence offered by the defendant is in sharp conflict therewith and presents a substantial defense.’ Fuller v. State, 269 Ala. 312, 333, 113 So.2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960).”
“ ‘Granger [v. State ], 473 So.2d [1137,] 1139 [ (Ala.Crim.App.1985) ].’
“White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989).”
Hulsey v. State, [Ms. CR-13-0357, October 3, 2014].(Ala.Crim.App.2014). 
Section 13A-6-131(a), Ala.Code 1975, provides:
“A person commits the crime of domestic violence in the second degree if the person commits the crime of assault in the second degree pursuant to Section 13A-6-21[, Ala.Code 1975], ... and the victim is a current or former spouse, parent, child, any person with whom the defendant has a child in common, a present or former household member, or a person who has or had a dating or engagement relationship with the defendant.”
Section 13A-6-21(a)(l), Ala.Code 1975, provides that “[a] person commits the crime of assault in the second degree if the person ... [w]ith intent to cause serious physical injury to another person, ... causes serious physical injury to any person.” “Serious physical injury” is defined, in turn, in §' 13A-1-2(14), Ala.Code 1975, as “[p]hysical injury which creates a substantial risk of death, or which causes serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.”
*382 To sustain a-conviction óf domestic violence in the second'degree in this case, the evidence would need to demonstrate that Hand’s relationship with Culp corresponded with one of the types of relationships set out .in § 13A-6-131(a), that Culp inflicted serious physical injury to Hand, and that Culp intended to do so. Hand testified that Culp had been her boyfriend and that she and Culp had lived together “[o]ff and on” for approximately a year when she decided to leave him on April 8, 2008. (R. 385.) That evidence, which demonstrated that at the time of the assault Hand was “a present or former ... member” of Culp’s household and that she was “a person who ... had a dating ,.. relationship with [Culp]," satisfied the relationship requirement of § 13A-6-131(a). .
The evidence was also sufficient to allow the jury to determine that Hand suffered “serious physical injuries.” ■ In Anderson v. State, 686 So.2d 381 (Ala.1996), the Alabama Supreme Court held that “testimony indicating] that.the victim had-a deep puncture wound from a knife; trauma to the head, along with various bruises and scrapes; a fractured rib; and a burst eardrum” was sufficient to establish that the victim had suffered “serious physical injuries.”[2] 686 So.2d at 385.
In the instant case, Dr. Bess testified that, after the assault, Hand’.s lower jaw was broken in two places and that she “had some swelling, and her bite was way off. Her jaw was off to the side.” (R. 194.) Dr. Bess also said that “[i]t would take a lot of force to break a mandible in a young, healthy person.” (R. 195.) Dr. Bess performed surgery on Hand’s jaw, during which he repaired it with metal plates and screws. Dr. Bess testified that Hand “had a lot of pain.” (R. 202.) Hand testified that, after Culp broke her jaw, she could not speak because of the injury. Hand also said that the level of pain she experienced after being hit “was pretty intense” and that she went into shock after ■arriving at the hospital. (R. 224.) That evidence demonstrated that Hand suffered “serious physical injuries” from the assault.
The evidence also demonstrated that Culp intended to cause Hand’s injuries. “Intent may be presumed from the use of a deadly weapon, the character of the assault, and other attendant circumstances surrounding the assault.” Wells v. State, 768 “So.2d 412, 415 (Ala.Crim.App.1999). ’
“Further, ‘ “[i]ntent, we know, being a state or condition of the mind, is rarely, if' ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.” ’ Ex parte C.G., 841 So.2d 292, 301 (Ala.2002), quoting Pumphrey v. State, 156 Ala. 103, 106, 47 So. 156, 157 (1908). Although evidence tending to show intent is usually circumstantial, ‘[circumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant’s guilt.’ Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992).”'
Powers v. State, 963 So.2d.679, 692 (Ala.Crim.App.2006).
Hand testified , that, on April 8, 2008, as she was leaving the trailer she had shared with Culp, “he reached above [her] and closed the door as [she] was trying to open it.” (R. 183.) Culp then hit Hand in the face, “[r]ight along the jaw line.” (R. 184.) *383 Hand said that, after Culp struck her, her jaw was “cocked over” and that she was unable to open her mouth. (R. 221.) As noted above, Dr. Bess testified that Hand had suffered two fractures and.- that “[i]t would take a'lot of force to break a mandible in a young, healthy person.” (R. 195.) Dr. Bess repaired Hand’s jaw with metal plates and screws. That evidence was sufficient to allow the jury to infer that Culp intended to cause Hand’s injuries.
• B.
In arguing that the circuit court erred in denying his motion for judgment of acquittal, Culp asserts that Hand was not credible because she “gave two different accounts of the alleged events and admitted on the stand that she was a liar.” (Culp’s brief, p. 11.)
We have explained:
, “[A]ny ‘inconsistencies and contradictions in the State’s evidence, as well as [any] conflict between the State’s evidence and that offered by the appellant, [goes] to the weight of the evidence and [creates a question] of fact -to be resolved-by the jury.’ Rowell v. State, 647 So.2d 67, 69-70 (Ala.Crim.App.1994). ‘ “ ‘[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.’ ” ’ Johnson v. State, 555 So.2d 818, 820 (Ala.Crim.App.1989), quoting Harris v. State, 513 So.2d 79, 81 (Ala.Crim.App.1987), quoting in turn Byrd v. State, 24 Ala.App. 451, 451, 136 So. 431, 431 (1931). More importantly,‘“[t]he question of the victimt-’s] credibility [is]- one for the jury and not for this Court.”’ Rowell, 647 So.2d at 69, quoting Coats v. State, 615 So.2d 1260, 1260 (Ala.Crim.App.1992). ‘We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial.’ Johnson, 555 So.2d at 820. ‘ “When the jury has passed on the credibility of evidence tending to establish the defendant’s guilt, this Court cannot disturb its finding.”’ Rowell, 647 So.2d at 69, quoting Collins v. State, 412 So.2d 845, 846 (Ala.Crim.App.1982). -Furthermore, ‘ “[t]his Court must view the evidence in the light most favorable to the State, and ‘draw all reasonable inferences and resolve all credibility choices in favor of the trier of fact.’ ’•’ ’ D.L. v. State, 625 So.2d 1201, 1204, (Ala.Crim.App.1993), quoting Woodberry v. State, 497 So.2d 587, 590 (Ala.Crim.App.1986). -Any issues regarding the1 weight and credibility of the evidence are not reviewable on appeal once the state has made a prima facie case.’ Jones v. State, 719 So.2d 249, 255 (Ala.Crim.App.1996), aff'd, 719 So.2d 256 (Ala.1998).”
Buford v. State, 891 So.2d 423, 429-30 (Ala.Crim.App.2004).
The issue of Hand’s credibility was a matter for the jury’s consideration, and does not provide a basis for reversing Culp’s conviction.
, II. ‘ ‘ '
Cuip.next asserts that the circuit court erred in admitting e-mails into evidence. State’s exhibit 4 was a collection of e-mails that Culp and Hand had sent to each other in the months following the assault. He specifically contends that the admission of that exhibit was erroneous because: 1) the e-mails were never properly authenticated; 2) the e-mails, were not relevant to the case; 8) the prejudicial effect of the emails outweighed any probative value they possessed; and 4) the content of the emails constituted inadmissible hearsay.
“Alabama -courts have often stated that a trial court has substantial discretion in determining whether evidence is admissible and that a trial court’s decision will not be reversed unless its determination constitutes- a clear abuse .of discretion.” *384 Hosch v. State, 155 So.3d 1048, 1081 (Ala.Crim.App.2013) (citing Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000)).
, ' A.
Culp contends that the e-mails were never properly authenticated. To date, no Alabama case has directly addressed the proper authentication of emails; however, other states have addressed the issue. In State v. Koch, 157 Idaho 89, 334 P.3d 280 (2014), the Idaho Supreme ■ Court considered- for the first time the foundational requirements for admitting e-mails. The Court wrote: .
“Because Idaho Rule of Evidence 901 is based on Federal Rule of Evidence 901, how other jurisdictions have interpreted the federal rule’s requirements with regard to the admission óf e-mails and text messages is instructive in this case. Other jurisdictions have, recognized that electronic evidence may be authenticated in a number of different ways consistent with Federal Rule 901 and corresponding state statutes. Courts have not required proponents offering printouts of e-mails, internet chat room dialogues, and cellular phone text messages to authenticate them with direct evidence, such as an admission, by the author or the testimony of a witness who saw the purported author typing the message. See, e.g., United States v. Fluker, 698 F.3d 988, 999 (7th Cir.2012). Rather, courts have held that circumstantial evidence establishing that the evidence was what the proponent claimed it to be was sufficient. See, e.g., State v. Thompson, 111 N.W.2d 6l7, 624 (N.D.2010) (providing a comprehensive review of other jurisdictions’ authenticity requirements for electronic communi- ’ cations). Circumstantial proof might include the e-mail - address, cell phone number, or screen name connected with the message; the content of the messages, facts included within the text, or style of writing; and metadata such as the document’s size, last modification date, or the computer IP address.' See Fluker, 698 F.3d at 999; United States v. Siddiqui 235 F.3d 1318, 1322-1323 (11th Cir.2000); United States v. Safavian, 435 F.Supp.2d 36, 40-41 (D.D.C.2006).

(Í

“While direct evidence is not required to authenticate a text message or e-mail, most jurisdictions require something more than just confirmation that the-number or e-mail address belonged to a particular person. See, e.g., In re F.P., 878 A.2d, 91, 93-95 (Pa.Super.Ct.2005) (instant messages, properly authenticated through circumstantial evidence including screen names and context of messages and surrounding circumstances); Commonwealth v. Williams, 456 Mass. 857, 926 N.E.2d 1162 (2010) (admission-of MySpace message was error where proponent advanced no circumstantial evidence as to security of MySpace page or purported author’s exclusive access). Often it was important that there be evidence that the e-mails, instant messages, or text messages themselves contained factual information or references unique to the parties involved. ■ For example, in Safarían the District of Columbia federal district court held that e-mail messages were properly authenticated where the e-mail addresses'contained distinctive characteristics including the name of the person connected to the address, the bodies of the messages, contained a name of the sender or recipient, and the content of the. e-mails further authenticated them as being from the purported sender to the purported recipient. . 435 F.Supp.2d at 40.”
157 Idaho .at 89, 334 P.3d at 287-88.
In Pavlovich v. State, 6 N.E.3d 969 (Ind.Ct.App.2014), the Court of Appeals of *385 Indiana addressed a claim that the trial court had erroneously admitted e-mails that had not been properly authenticated:
“Pavlovich contends that the text and e-mail messages were not properly authenticated as having been written by him. ‘To lay a foundation for the admission of evidence, the proponent of the evidence must show that it'has- been authenticated.’ Hape v. State, 903 N.E.2d 977, 989 (Ind.Ct.App.2009), trans. denied. This authentication requirement applies to the substantive content of text messages purported to be sent by a party. See id. Under Indiana Evidence Rule 901(a) as it existed at the time of Pavlovich’s trial, authentication of evidence was ‘satisfied by evidence sufficient to support a finding that the- matter in question is what its proponent claims.’ ‘Absolute proof of authenticity is not required.’ Fry v. State, 885 N.E.2d 742, 748 (Ind.Ct.App.2008), trans. denied. The proponent of the evidence needs to establish only a reasonable probability that the document is what it is claimed to be. Id. Once this reasonable probability is shown, any inconelusiveness regarding the exhibit’s connection with the events at issue goes to the exhibit’s weight, not its admissibility. Id. Additionally, authentication of an exhibit can be established by either direct or circumstantial evidence. Newman v. State, 675 N.E.2d 1109, 1111 (Ind.Ct.App.1996).
[[Image here]]
“At the time of Pavlovich’s trial, Indiana Evidence Rule 901(b)(4) provided that evidence could be authenticated by ‘[distinctive characteristics and the like,’ including ‘[a]pperance [sic], contents, substance, internal patterns,, or other distinctive characteristics, taken in conjunction with circumstances.’ This language is very similar to Federal Rule of Evidence 901(b)(4). In what has been described as a ‘watershed’ opinion with respect to authentication of text and email messages, the United States District Court of Maryland stated that ‘[t]his rule is one of the most'frequently used to authenticate e-mail and other electronic records.’ Lorraine v. Market Am. Ins. Co., 241 F.R.D. 534, 546 (D.Md.2007). Quoting the official commentary to this rule, the Lorraine court observed':
“ ‘ “[t]he characteristics of the offered item itself, considered in. the light of circumstances, afford authentication techniques in great variety,” including authenticating an exhibit lay showing that it came from a “particular person . by virtue of its, disclosing knowledge of facts known peculiarly to him,” or authenticating “by content and circumstances indicating it was in reply . to a duly authenticated” document.’
“Id. In other words, ‘[u]se of this rule often is characterized as authentication solely by “circumstantial evidence.’ ” Id,
_ , “The Texas Court of Criminal Appeals has noted the various ways in which text or e-mail messages have been adequately authenticated, as having been written by a party:
• “ ‘In some cases, the purported-sender actually admitted- to authorship, either in whole or in part, or was seen composing it. In others, the business records of an internet service provider or a cell phone company have shown that the message originated with the purported sender’s personal computer or cell phone under circumstances in which, it is reasonable to believe that only the purported sender would have had access to the computer or cell phone. Sometimes the communication has contained information’ that only *386 the purported sender’ could be expected to know. Sometimes the purported. sender has responded to an exchange of electronic communications in such a way as to indicate circumstantially that he was in fact the author of the particular communication, the authentication of which is in issue. And sometimes other circumstances, peculiar .to the facts of the particular case, have sufficed to establish at least a prima facie showing of authentieation.’
“Tiend [v. State], 358 S.W.3d [633] at 640-641 [ (Tex.Crim.App.2012) ] (footnotes' and citations omitted). See also People v. Downin, 357 Ill.App.3d 193, 293 IllDec. 371, 828 N.E.2d 341, 350-351 (2005) (holding e-mails were adequately authenticated as being written by defendant where victim personally knew defendant, had communicated previously with defendant through e-mail, defendant was responsive to victim’s email message, and e-mail contained information that woujd have been known exclusively to him; although e-mails were adequately authenticated and admissible, ultimate question of authorship was for trier of fact to decide), app. denied; Commonwealth v. Amaral, 78 Mass.App.Ct. 671, 941 N.E,2d 1143, 1146-1147 (2011) (holding e-mails were adequately authenticated where in one, defendant indicated he would be at a certain place at a certain time .and he in fact appeared at that place and time, and in another e-mail he provided a telephone number, • which investigating officer immediately called and defendant answered), rev. denied; In re F.P., 878 A.2d 91, 95 (Pa.Super.Ct.2005) (holding instant messages were adequately authenticated as having been written by defendant where defendant referred to his name and made threats and discussed events related to matters about which victim testified); Manuel v. State, 357 S.W.Sd 66, 77-78 (Tex.App.2011) (holding text messages were adequately authenticated as being written by defendant where stalking victim recognized the number from which messages originated as belonging to defendant, and victim also received voice mail messages from number and she recognized the defendant’s voice), rev, refused,”
Pavlovich, 6 N.E.3d at 976-77 (footnotes omitted). The Court of Appeals of Indiana held that the e-mails “were properly introduced into evidence and authenticated as having been written by Pavlovich.” 6 N.E.3d at 980.
Rule 901(b)(4), Ala. R. Evid., is worded identically, to its federal counterpart, as well as the versions in Idaho and Indiana. Like federal Rule 901(b)(4), Idaho’s Rule 901(b)(4), and Indiana’s Rule 901(b)(4), Alabama’s.Rule 901(b)(4) provides that evidence can be authenticated by “[d]istine-tive characteristics and the like,” including “[alppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.” In the Advisory Committee’s Notes pertaining to this subsection, the Advisory Committee’s Notes to the federal rule are referenced, as is Alabama common law.
In the instant case, Hand testified that Culp had sent the e-mails to her and that she had assisted him in setting up the email account from which the e-mails had been sent. Hand said each e-mail sent from Culp’s account contained his photograph and a screen name that he used. Many of the e-mails concluded with “rne,” which are Culp’s initials. (C. 304-05, 307-OS, 310-14, S16-Í8, and 321.)
The e-mails sent from Culp’s. account also contained references that were uniquely used by Culp and Hand. Hand *387 testified that references to “Sammy” and to Wheaties cereal were ways she and Culp talked about methamphetamine. (B. 248.) Several of the e-mails sent from Culp’s account contained the word “Sammy” or “Sammys.” , (C. 302, 308; and 814.). Another e-mail contained a reference to Wheaties cereal.[3] (C. 303.)
The e-mails were properly authenticated, and the circuit court did not abuse its discretion in admitting them.
B.
Culp next argues that the circuit court’s admission of the e-mails was erroneous because the content of the e-mails was not relevant to the case. However, we have reviewed the record, and Culp never objected to the admission of the e-mails on the basis of relevance.
“‘Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). ‘“[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.’ McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Fritft, 526 So.2d 880, 882 (Ala.1987). ‘The purpose of requiring a specific objection, to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.’ Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994).”
Ex parte Coalliette, 857 So.2d 793, 794-95 (Ala.2003).
Because Culp did not raise this issue before the circuit court, it is not preserved for our review.[4]
C.
Culp also asserts that the circuit court erred in admitting the e-mails because, he asserts, the prejudicial effect of the e-mails outweighed any probative value they possessed. Our review of the record reveals, however, that Culp never objected to the admission of the e-mails on the basis that their prejudicial effect outweighed their probative value.
Because Culp did not raise this issue before the circuit court, it is not preserved for our review.[5] See Ex parte Coulliette, supra.
D.
Culp further contends that the emails constituted inadmissible hearsay. *388 Our review of the record indicates that Culp never objected to the admission of the e-mails on the basis that the e-mails constituted inadmissible hearsay. Because Culp did not raise this issue before the circuit court it is not preserved for our review, and Culp is due no relief. See Ex parte Coulliette, supra.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, KELLUM, and JOINER, JJ., concur.

. In a companion case, Culp had also been indicted for unlawful imprisonment in the second degree. The jury acquitted Culp of 'that charge.

. The physician who treated the victim in Anderson also ‘'characterized some- of [the victim’s] injuries as ‘severe.’ ” 686 So.2d at 385, - •

. The e-mail references Culp’s "breakfast of champions" and stated that Culp "couldnt [sic] even finish [his] bowl." (C. 303.) We take judicial notice that Wheaties cereal has been advertised as the "breakfast of champions.” See Kmart Corp. v. Bassett, 769 So.2d 282, 286 (Ala.2000) (“A court may take judicial notice of certain facts that are within the common knowledge.").

. On one occasion when Hand was testifying about the e-mails, Culp did appear to object on the basis of relevance. However, Culp’s objection was to Hand’s testimony as to why she had printed the e-mails, which had already been admitted into evidence.

.Culp did state that the e-mails referenced tire assault for which he was convicted in a way that was "of no probative value,” but he did so while objecting to Hand’s reading the e-mails, which had already been admitted into evidence. (R, 299.)